## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.C.**

**No. 21-0137** (Logan County 19-JA-68)

## MEMORANDUM DECISION

Petitioner Mother M.C., by counsel William C. Duty, appeals the Circuit Court of Logan County's January 22, 2021, order terminating her parental rights to J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, J. Christopher White, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in applying an incorrect standard of evidence and in finding that the DHHR provided reasonable efforts to reunify the family.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the instant petition, the DHHR alleged that the parents were the subject of "ten or more" Child Protective Services ("CPS") investigations pertaining to domestic violence and physical abuse.[2] In 2000, the DHHR found maltreatment in the home related to "shaking a child and failure to protect." In addition, the father was charged with two counts of domestic battery

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Some of the DHHR's prior investigations involve J.C.'s older siblings, who are not at issue in this appeal.

and two counts of domestic assault based on the findings of that investigation. Petitioner initially admitted to domestic violence in the home, then recanted during the investigation process. In 2007, the DHHR conducted an investigation based on allegations of a child in the home "being choked" and physical markings observed on the child's neck, but the parents denied the accusations. In 2009, children in the home "disclosed fear of [the father]" and disclosed that they witnessed him hold a gun to petitioner's head, "pull the trigger three separate times and on the fourth time of pulling the trigger . . . aimed the gun towards the hillside . . . and the gun fired." Finally, in 2018, the DHHR investigated allegations of physical and emotional abuse in the home but, again, the parents denied that they mistreated their children. Throughout these earlier proceedings, the DHHR alleged that the father was noncompliant during several open CPS cases for the family.

The DHHR filed the instant child abuse and neglect petition in May of 2019, alleging that petitioner and the father exposed J.C. to domestic violence in the home. The DHHR alleged that the investigation began due to J.C.'s excessive absence from school. During an interview with a CPS worker, then-seven-year-old J.C. stated that he wanted to stay home so that he could protect petitioner from the father. He disclosed that the father "put a belt around [petitioner's] neck" and held a knife to her throat. He stated that petitioner told him about the incident and showed him a picture. He also disclosed seeing the father hit petitioner "real hard." According to the DHHR, J.C. became emotional during the interview and asked the CPS worker not to speak to his parents because petitioner told him not to tell anyone about the abuse or else she would "be dead and [J.C.] won't see [her] no more." J.C. stated that the father had described to the child how "[h]e will kill us. He will put us in a car and make it look like a car accident and then, well, we will be gone."

CPS workers contacted the parents, who both denied the allegations. However, once alone, petitioner admitted to a CPS worker that the allegations were true. She admitted that the father had always been violent and that he had held guns to her head, held knives to her body, threatened to kill her, and hit her. According to the DHHR, petitioner reported that she was afraid to remain in the home and afraid of what might happen. The DHHR obtained photographs of bruising on petitioner's neck and arm that she indicated were the result of the father's violent actions. Petitioner waived her right to a preliminary hearing, and the circuit court ordered both parents to participate in a parental fitness evaluation.

The circuit court held an adjudicatory hearing in September of 2019. Petitioner filed an answer to the petition, admitting that she had been the victim of "chronic domestic violence," and moved for a post-adjudicatory improvement period. The court also learned that petitioner had completed her parental fitness evaluation and filed for a domestic violence protective order against the father. Petitioner moved for assistance with her first month's rent and security deposit to establish a separate residence, which the circuit court granted. The father had attended his parental fitness evaluation, but he was "inappropriate with staff" and left before the evaluation was completed. The circuit court ordered that the adjudicatory hearing would be continued to give the father an opportunity to complete his evaluation.

The circuit court continued an adjudicatory hearing in October of 2019, due a recent vehicle accident involving the father. The father had been hospitalized as a result of the accident

and at least one person was killed. The DHHR filed an amended petition alleging that the father had been charged with driving under the influence resulting in death and driving under the influence resulting in bodily injury, both felonies. Finally, the circuit court held an adjudicatory hearing in late October of 2019, and petitioner stipulated to the allegations in the petition. The father did not appear but was represented by counsel. The circuit court granted petitioner's motion for an improvement period. In so doing, the court incorporated the recommendations in the parental fitness evaluation, which suggested that petitioner obtain a safe and secure household, disassociate from the father, take parenting classes, and attend individual therapy sessions.

The circuit court held a review hearing on petitioner's improvement period and an adjudicatory hearing on the father in January of 2020. Regarding petitioner, the DHHR raised concerns about her lack of independent housing and failure to comply with domestic violence counseling. Ultimately, however, petitioner's improvement period continued. The father moved for an improvement period. He testified, denying the allegations contained in the petition but admitting to alcohol and prescription medication abuse. The circuit court held the father's motion in abeyance.

In March of 2020, the parties convened to review petitioner's improvement period. Her counsel moved to withdraw, and the circuit court granted the request. The DHHR and guardian noted that they believed petitioner was not compliant with services. The circuit court held a final review hearing in July of 2020, and found that petitioner failed to complete her post-adjudicatory improvement period.

The circuit court held the final dispositional hearing in December of 2020. Petitioner and the father both moved for a post-dispositional improvement period. Petitioner testified in support of her motion and denied the allegations in the petition that she had previously admitted. She asserted that she "went and lied so [she] could see [her] son" and believed that there were no issues with her parenting that needed to be addressed. Petitioner also testified that she fabricated the allegations in her petition for the domestic violence protective order that she filed in September of 2019 and ultimately withdrew the petition. She stated that J.C. was lying about the allegations. She argued that CPS workers and her attorney had lied to her and coerced her into lying about the allegations in the petition. She explained that she obtained a trailer to serve as her housing but admitted that she placed it on the father's property. She further admitted that she did not have a phone and service providers had to call the father in order to reach her. Based upon this evidence, the circuit court denied petitioner's motion for a post-dispositional improvement period, finding that she had refused to acknowledge the allegations in the petition and, therefore, an improvement period would be an exercise in futility.

The circuit court then heard evidence regarding the DHHR's motion to terminate the parents' parental rights. The DHHR presented testimony from petitioner's psychological evaluator and a DHHR worker. The circuit court found that petitioner continued to reside in close proximity to the father, despite her earlier admissions to being a victim of his chronic domestic abuse. The court also found that petitioner was offered services by the DHHR, and she failed to avail herself of those services. In support of this finding, the DHHR worker testified that petitioner did not consistently participate in services, including domestic violence counseling that

the DHHR had arranged. The circuit court found that petitioner "failed to comply with each and every recommendation" of her parental fitness evaluation. Based on petitioner's performance and her testimony during the dispositional hearing, the parental fitness evaluator opined that her prognosis for improved parenting was "virtually non-existent." Ultimately, the circuit court found that the DHHR had used reasonable efforts to reunify the family but that the parents failed to take advantage of the services offered to them. It concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the child. Accordingly, the circuit court granted the DHHR's motion to terminate petitioner's parental rights by its January 22, 2021, order. She now appeals that order.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in applying an incorrect standard of evidence at the dispositional hearing. Petitioner correctly points out that "the evidence  upon  which parental rights may be terminated must be clear and convincing." *In re Jeffrey R.L.*, 190 W. Va. 24, 33, 435 S.E.2d 162, 171 (1993) (citation omitted). She asserts that the circuit court applied a "more likely than not" standard at the dispositional hearing in making its findings of fact. During the hearing, the circuit court stated that "[t]he evidence, however, remains credible to me, that it was more likely than not that these incidents of domestic violence occurred in this home, that they negatively affected the ability of [the parents] to parent, and that for whatever reason they've not been addressed, much less rectified or fixed." Critically, petitioner readily admits that the circuit court's dispositional order "sets forth the proper standard" and found that there was clear and convincing evidence that petitioner had failed to

---

[3]The father's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in his current placement.

remedy the conditions of abuse and neglect. Nevertheless, petitioner argues that the circuit court applied the incorrect standard during the hearing and, therefore, erred in its decision.

Upon our review, we find that the circuit court's written dispositional order is controlling. This Court has previously held "it is clear that where a circuit court's written order conflicts with its oral statement, the written order controls." *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 107 n.5, 459 S.E.2d 374, 384 n.5 (1995); *see also State v. White*, 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212 n.2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)); *State ex rel. Erlewine v. Thompson*, 156 W. Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]" (citations omitted)). Accordingly, the circuit court's order controls over its oral statement during the hearing, and we find that the circuit court, by petitioner's own admission, applied the correct standard for disposition and the termination of her parental rights.

Second, petitioner avers that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the family, which she argues in three parts. First, she argues that the circuit court erred in failing to consider whether she was a "battered parent" within the meaning of West Virginia Code § 49-1-201.[4] However, petitioner is entitled to no relief. Pursuant to West Virginia Code § 49-4-601(i) "at the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to . . . whether the [parent] is abusing, neglecting, or, if applicable, a battered parent." Here, petitioner failed to include the adjudicatory order on appeal.

> An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, *State v. Myers*, 229 W. Va. 238, 728 S.E.2d 112 (2012) (citations omitted). To the extent that petitioner asks this Court to presume error in the circuit court's adjudicatory findings, we decline and presume correctness in the judgment below.

---

[4]"Battered parent" for the purposes of § 49-4-601 et seq. of this code means a respondent parent, guardian, or other custodian who has been adjudicated by the court to have not condoned the abuse or neglect and has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence as defined by § 48-27-202 of this code, which was perpetrated by the same person or persons determined to have abused or neglected the child or children.

W. Va. Code § 49-1-201.

In the second part of her argument, petitioner argues that the circuit court erred in admitting the expert testimony of her parental fitness evaluator, specifically because the evaluation in question was over sixteen months old at the time the testimony was given. In the third part of her argument, petitioner argues that the circuit court's finding that the DHHR made reasonable efforts was erroneous because it was based solely on general statements of the testifying DHHR worker. Petitioner asserts that the DHHR was required to set forth a detailed statement as to how it provided services and how COVID-19 affected the services provided. Without belaboring the specifics of petitioner's argument further, we note that these issues were not raised below.

"Our general rule . . . is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." *Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993).

> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

*Id*. Notably, petitioner, by counsel, had an extensive opportunity to develop a record of either of these issues below during both the circuit court's final review of her improvement period and the final dispositional hearing; however, she failed to do so, and her failure impedes appropriate review on appeal. Therefore, these arguments will not be considered.

In conclusion, we find that the circuit court did not err in terminating petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination is necessary for the child's welfare. *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (holding that termination of parental rights, "the most drastic remedy" in abuse and neglect cases, may be employed "when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (citation omitted)). Notably, petitioner does not challenge the circuit court's finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the welfare of the child. This finding is fully supported by the record. Petitioner was granted an improvement period, offered services, failed to participate or respond to those services, and, ultimately, failed to remedy the conditions of abuse and neglect, even nineteen months after J.C. was removed from the home. *See* W. Va. Code § 49-4-610(9) (setting forth that, in the absence of compelling circumstances, a parent shall not be granted any combination of improvement periods or extensions that would cause the child to be in foster care for "more than fifteen months of the most recent twenty-two months"). Moreover, petitioner's sudden denial of the conditions of abuse and neglect constitutes a failure to acknowledge the

problems that must be corrected and "results in making the problem untreatable." *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted) (considering that a parent's "failure to acknowledge the existence" of the conditions of abuse and neglect makes "an improvement period an exercise in futility"). Accordingly, the circuit court did not err in terminating petitioner's parental rights as there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 22, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 1, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton